UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Shunequa Smalls, | ) C/A No. 9:12-1784-RBH-BM |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) **Report and Recommendation** |
| | ) |
| Commissioner of the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

   The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the final decision of the Commissioner wherein she was denied disability benefits.

This case was referred to the undersigned for a report and recommendation pursuant to Local Rule

73.02(B)(2)(a), (D.S.C.).

   Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security

Income (SSI)[1] on April 2, 2009, alleging disability beginning September 15, 2008 due to headaches,

nerve problems in her legs, diabetes, and herpes.  Plaintiff's claims were denied initially on

September 3, 2009, and upon reconsideration on May 26, 2010. (R.p. 27).  Plaintiff then requested

a hearing before an Administrative Law Judge ("ALJ"), which was held on March 14, 2011.  (R.pp.

---

[1]Although the definition of disability is the same under both DIB and SSI; Emberlin v. Astrue, No. 06-4136, 2008 WL 565185, at * 1 n. 3 (D.S.D. Feb. 29, 2008); "[a]n applicant who cannot establish that she was disabled during the insured period for DIB may still receive SSI benefits if she can establish that she is disabled and has limited means." Sienkiewicz v. Barnhart, No. 04-1542, 2005 WL 83841, at ** 3 (7th Cir. Jan. 6, 2005). See also Splude v. Apfel, 165 F.3d 85, 87 (1st Cir. 1999)[Discussing the difference between DIB and SSI benefits].



35-69).  At the hearing, Plaintiff amended her alleged onset date of disability to March 31, 2009.

(R.p. 40).  The ALJ thereafter denied Plaintiff's claims in a decision issued March 24, 2011.  (R.pp.

27-34).  The Appeals Council granted Plaintiff's request for a review of the ALJ's decision, and on

April 17, 2012 issued a decision which modified the ALJ's residual functional capacity assessment

but otherwise agreed with the ALJ's findings and conclusions, finding that Plaintiff was not disabled

as defined in the Social Security Act ("SSA") at any time through March 24, 2011.  For purposes of

judicial review, the determination of the Appeals Council is the final decision of the Commissioner.

(R.p. 1).

Plaintiff then filed this action in United States District Court.  Plaintiff asserts that

there is not substantial evidence to support the Appeals Council's and ALJ's findings, and that the

decision should be reversed and remanded for further consideration, or for an outright award of

benefits.  The Commissioner contends that the decision to deny benefits is supported by substantial

evidence, and that Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the

Commissioner's decision is supported by substantial evidence, and (2) whether the conclusions

reached by the Commissioner are legally correct under controlling law.  Hays v. Sullivan, 907 F.2d

1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v.

Califano, 611 F.2d 980, 982-983 (4th Cir. 1980).  If the record contains substantial evidence to

support the Commissioner's decision, it is the court's duty to affirm the decision.  Substantial

evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular
> conclusion. It consists of more than a mere scintilla of evidence but may be somewhat



less than a preponderance. If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence." [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F. 2d 640 (4th Cir. 1966)).

The Court lacks the authority to substitute its own judgement for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## Discussion

A review of the record shows that Plaintiff, who was thirty-five (35) years old on the amended onset date of her claimed disability, has a tenth grade education with past relevant work experience as a cashier, customer service clerk, and hostess. (R.p. 33). In order to be considered "disabled" within the meaning of the SSA, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[2] of diabetes, diabetic neuropathy, myofascial pain syndrome, back disorder, and obesity, she nevertheless retained the residual functional capacity (RFC) for a restricted

---

[2]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

3



range of light work,[3] that her past relevant work did not require the performance of work activities precluded by her RFC, and that Plaintiff was therefore not entitled to disability benefits. (R.pp. 29-30, 33). In the Commissioner's final decision, the Appeals Council affirmed the ALJ's finding that Plaintiff could perform a range of light work, but clarified that Plaintiff could stand and/or walk six hours each in an eight-hour workday, instead of the four hours that the ALJ had assessed. (R.p. 10).

Plaintiff asserts that the Appeals Council's decision erred in modifying the ALJ's RFC assessment, because the evidence did not support a finding that Plaintiff could perform any work and that the ALJ's RFC assessment was not sufficiently supported as required by Social Security Ruling ["SSR"] 96-8p. Plaintiff also argues that the ALJ erred in finding that her headaches were not a severe impairment. However, after a careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision should therefore be affirmed.

## I.

The case record includes the records of Plaintiff's treatment by five different medical providers during the time period March 2008 through March 2011. The record also contains the opinions of the two Disability Determination Services ("DDS") consultant physicians who performed reviews of the Plaintiff's medical record, in September 2009 and May 2010. The relevant records

---

[3]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).



of Plaintiff's medical providers and the DDS physicians which were presented as evidence to the Appeals Council and the ALJ are summarized as follows.

### Beaufort Memorial Hospital, Emergency Department

On March 24, 2008, Plaintiff was seen in the Emergency Department complaining of pain in her left leg. Examinations yielded essentially normal findings, and an ultrasound as well as a lower leg x-ray were both negative. Plaintiff was advised to elevate her leg and given Anaprox and Diclofenac for the pain. (R.pp. 336-337). Plaintiff was also seen on November 6, 2008, again for complaints of left leg pain. It was noted that on her previous visit Plaintiff had been advised to follow up with orthopaedics as well as with her primary care physician, "both of which she has not done." Although Plaintiff complained of pain of "10/10 on a pain scale", a review of Plaintiff's symptoms as well as a physical examination were all negative and normal, while x-rays and an ultrasound were also again all negative. The diagnosis was chronic left lower extremity pain and Plaintiff was told to elevate her left leg and given Naprosyn for pain control. (R.pp. 333-335). In January of 2009, Plaintiff returned with continued complaints of left leg pain. Examination and diagnostic test results were the same, and it was also noted that Plaintiff's left lower extremity showed no obvious edema and that she had good muscle strength and tone with no evidence of muscle loss or swelling. (R.pp. 330-331).

On March 9, 2009, an MRI of Plaintiff's lumbar spine revealed intervertebral disk protrusion at the L4-L5 level. However, it was primarily on the right side causing a mild bilateral neural foraminal narrowing, although Plaintiff's complaints were reported as primarily emanating from the *left* side. The remainder of the MRI was unremarkable. (R.p. 342). On March 27, 2009, Plaintiff was seen for complaints of back pain with left radicular symptoms. She also reported having



a headache.  Plaintiff stated that she had received a steroid injection and since then had experienced paresthesias down to the toes.[4]  Plaintiff exhibited tenderness to palpation in the lower extremity even to soft touch, and she walked with a somewhat antalgic gait.  (R.pp. 328-329).

Plaintiff returned three days later, on March 31, 2009 (her amended disability onset date), this time complaining of left foot and left ankle pain.  She stated that the injections she had received were not improving her pain, and complained of point tenderness in her left calf, knee, ankle and foot. However, on examination her muscle strength was 5/5 (full).  Plaintiff was assessed with myofascial syndrome involving the left lower extremity. (R.p. 326-327).  On June 7, 2009, Plaintiff was seen for complaints of left leg pain.  She also complained of pain on palpation of the left great toe as well as her left foot, although the doctor's note noted that the nurse had observed her "rubbing her left foot without any elicitation of pain".  Plaintiff also had almost full range of motion (4+/5) in her extremities (with pain in her left foot and toe), good muscle strength and tone, and intact nerves and sensation. Diagnosis was acute myofascial pain syndrome and acute diabetic neuropathy.  (R.pp. 322, 324).  On July 19, 2009, Plaintiff was seen for left shoulder and left arm pain, and in August 2009, she was seen for cold symptoms.  (R.pp. 391-394, 396).

On September 10, 2009, Plaintiff reported to the Emergency Department with pain in her left lower extremity and great toe.  (R.p. 440).  On October 25, 2009, Plaintiff returned with left leg nerve pain and left lower extremity discomfort, complaining of pain of 10/10 on a ten point scale.  Plaintiff said that she had a tingling, burning sensation that went from her knee to her big toe. However, review of Plaintiff's systems was negative and a physical examination was also essentially

---

[4]Plaintiff's pain specialist (Dr. Avinash Gupta) was contacted, who advised that Plaintiff's steroid injection "should not cause a headache [or] in any other way cause [Plaintiff's] current symptoms."  (R.p. 329).



normal, with it being specifically noted that there was no obvious edema or other findings on the left as compared to the right and that Plaintiff had full range of motion in her lower extremities. (R.pp. 437-438). On November 5, 2009, Plaintiff was seen for complaints of worsening chronic back pain with radiation down the left leg. The assessment included lumbar radiculopathy and hypertension related to pain. (R.pp. 435-436).

On November 19, 2009, Plaintiff went to the Emergency Department complaining of a severe headache. She reported that the pain had started after she had received an injection for her back. (R.p. 433). Plaintiff returned on November 20, 2009 and again on November 21, 2009, where she also complained of lower back pain on the left side that radiated to her left leg. A straight leg raise test was positive up to the 45 degrees with the left leg, although physical examinations continued to be essentially normal with good muscle strength and tone being noted bilaterally. Plaintiff was diagnosed with headaches, uncontrolled diabetes, and hypertension. (R.pp. 426-430). On January 5, 2010, Plaintiff was seen for headache pain, accompanied by photophobia, but with a normal neurological evaluation. (R.pp. 422-423). On January 11, 2010, an MRI of Plaintiff's brain revealed minor punctate foci of deep white matter hyperintensity involved left frontal deep white matter, possibly a result of migraine or previous trauma. This was suspected to be incidental and entirely nonspecific, and no other focal abnormality was identified. (R.p 449).

On February 11, 2010, Plaintiff went to the Emergency Department with complaints of leg pain and difficulty breathing. (R.pp. 417-418). Plaintiff returned on April 26, 2010 with left leg pain, including numbness and tingling. (R.pp. 563-566). On April 28, 2010, she was seen for a throbbing headache. (R.p. 560). On May 26, 2010, Plaintiff was admitted for chest pain. (R.pp.



554-559).  On July 2, 2010, Plaintiff reported back pain that radiated to her left leg, which was painful with movement.  (R.pp. 551-552).

On August 3, 2010, Plaintiff was seen for complaints of low back pain following a fall.  Physical examination was normal, and it was noted that Plaintiff's had 5/5 (full) strength in all of her extremities.  (R.pp. 547-548).  See Gaskin v. Commissioner of Social Security, 280 Fed.Appx. 472, 477 (6th Cir. 2008)[Finding that evidence of no muscle atrophy and that claimant "possesses normal strength" contradicted Plaintiff's claims of disabling physical impairment].  On October 11, 2010, Plaintiff was seen for a headache.  (R.pp. 543-546).  On October 26, 2010, Plaintiff went to the Emergency Department, stating that she was having a "break down".  However, Plaintiff was found to have a "calm" affect, and it was noted she had not experienced similar symptoms in the past and had not recently seen a physician.  She was assessed with anxiety and depression.  (R.pp. 538-541).  On November 18, 2010, Plaintiff reported pain in her right cheek, right ear and right jaw.  (R.p. 534).  On November 23, 2010, she was seen for complaints of chronic low back pain.  (R.pp. 530-533).  In December of 2010, Plaintiff reported to the Emergency Department with flu symptoms and low back pain.  (R.pp. 521, 525, 528).

**Beaufort Jasper Comprehensive Health Services - Dr. Ahraya Tocharoen, M.D.**

Plaintiff first saw Dr. Tocharoen on January 29, 2009.  Plaintiff complained of pain in her left lower leg, which included tingling and burning, and that she could not stand on her leg for 8 hours at work.  Plaintiff stated that her pain was "10/10" and "bother[ed] her at work", and she was "requesting [a] medical note to say she cannot work."  However, there were essentially no objective findings on examination, and it was noted that Plaintiff had "been evaluated in numerous settings without finding tangible evidence of a medical abnormality."  Further, although Plaintiff was

8



complaining of "severe" pain, the treatment note states that on observation Plaintiff "did] not appear to be in pain." Anderson v. Barnhart, 344 F.3d 809, 815 (8th Cir. 2003) [Evidence that a claimant is exaggerating symptoms can be considered as part of the evaluation of Plaintiff's subjective complaints]. The physician refused to give Plaintiff a noting saying she could not work, and referred Plaintiff to a neurologist for her complaints of severe left lower leg pain. (R.pp. 379-380).

Plaintiff was seen again on March 30, April 6, April 27, and May 5, 2009, for acute discomfort of the left lower leg and pain that radiated from the left lower back. Plaintiff was encouraged to exercise regularly. Dr. Tocharoen noted that Plaintiff's diabetes was uncontrolled and he adjusted her medications. (R.pp. 363-365, 375, 377). On July 9, 2009, Plaintiff saw Dr. Tocharoen for acute discomfort of the upper arm area. (R.p. 361). On July 28, 2009, Plaintiff complained of continued pain in her left shoulder and left lower leg "without any injury". She had been seen at the Emergency Department and was diagnosed with myofascial pain. Objective examination was normal although Plaintiff complained of tenderness. (R.p. 359).

Plaintiff returned on September 16, 2009 with complaints of acute discomfort and pain over the left lower leg including the big toe, again "without any injury". Other that subjective complaints of tenderness, physical examination was normal. (R.p. 459). On July 22, 2010, Plaintiff reported acute discomfort of the back over the midlumbar area on palpation. Physical examination was again normal. (R.p. 480).

### Low Country Pain Center - Dr. Avinash Gupta, M.D.

On February 24, 2009, Plaintiff saw Dr. Gupta for left leg radiculopathy. Plaintiff complained of being "in a painful state", she limped on her left leg, and complained of pain when hanging her leg down the edge of the examination table. She was very tender in the left calf region,



and Plaintiff complained of severe pain on flexion of her left foot. (R.p. 321). On March 3, 2009, Plaintiff complained of pain in her left lower extremity that radiated to her left foot, although examination of Plaintiff's spine was negative, she had normal range of motion, there were no sensory deficits present, and no muscle atrophy. Neurontin was prescribed. (R.pp. 319-320). On March 16, 2009, Plaintiff was seen again for left leg and knee pain, as well as low back pain. She had joint pain with swelling in her left leg. A lower spine exam revealed flexion to be 0 to 70 degrees, extension was 0 to 15 degrees and sideways bending was 0 to 50 bilaterally. A straight leg raise test was positive on the left to 50 degrees. Plaintiff was diagnosed with left lumbar radiculopathy. (R.p. 318). On March 25, 2009, Plaintiff received left L4 and L5 transforaminal injections. (R.p. 317).

On November 4, 2009, Plaintiff was seen for pain in her left leg and back. She also reported headaches. She had an antalgic gait and a positive straight leg raise test at 45 degrees. Plaintiff exhibited a lower extremity motor deficit in the L4-L5 area, and also complained of pain and tenderness in her 3rd and 4th fingers. Dr. Gupta noted left finger tendonitis. (R.p. 469). On November 17, 2009, Plaintiff received left L4/L5 transforaminal injections. (R.p. 468). On December 10, 2009, Plaintiff returned with complaints of "burning" pain in her leg and back, as well as headaches. Her gait was antalgic and a straight leg raise test was painful at 30 degrees. (R.p. 467).

On February 16, 2010, Dr. Gupta saw Plaintiff for complaints of pain in her left leg. Plaintiff stated that the pain was exacerbated by standing, sitting, and walking. She had an antalgic gait and a positive straight leg raise test at 50 degrees. (R.p. 466). On February 23, 2010, Plaintiff had another left L4/L5 transforaminal injection. (R.p. 465). On April 12, 2010, Plaintiff complained to Dr. Gupta of severe lower back pain. On examination Plaintiff complained of tenderness in the



mid and upper lumbar area and pain on extension of her lumbar spine. However, she had a normal gait, bilateral straight leg raise tests were negative, and her neurological examination was unremarkable. The diagnosis was resolving left lumbar radiculitis and a history of a right-sided L4-5 posterolateral disc herniation and lumbar facet syndrome. (R.p. 464).

On October 13, 2010, Plaintiff was seen for pain in her back and headaches, and on October 21, 2010, Dr. Gupta performed another left L4-5 transforaminal injection. (R.pp. 517-518). On November 11, 2010, Plaintiff returned with complaints of pain in her left leg, foot and back. She also complained of chest pain and headaches. At this visit Plaintiff had an antalgic gait and was using a cane. (R.p. 516).

### Physical Residual Functional Capacity Assessments

On September 2, 2009, state agency physician Dr. Jim Liao reviewed Plaintiff's medical records and completed a Physical Residual Functional Capacity Assessment in which he found that Plaintiff could perform light work with the ability to stand and/or walk about 6 hours in an 8 hour workday, and sit about 6 hours in an 8 hour workday. He believed Plaintiff was limited in her lower extremities to no heavy push/pull of pedals with the left lower extremity, and to only occasional climbing of ladders, ropes and scaffolds, but that she had no other limitations. (R.pp. 403-410). On May 24, 2010, state agency physician Dr. Jean Smolka reviewed Plaintiff's medical records and concluded that Plaintiff had the same exertional and postural limitations as opined to by Dr. Liao, except that she found Plaintiff to be unlimited in her ability to push and pull. (R.pp. 471-478). See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner].



11

**Coastal Neurology - Dr. Anne Taylor, M.D., Dr. Paul Mazzeo, M.D.**

Plaintiff was seen at Coastal Neurology on January 20, 2010 for a follow up evaluation of chronic daily headaches first considered by Dr. Mazzeo on November 21, 2009. Plaintiff reported to Dr. Taylor that she had had daily headaches since that time, and that Percocet was the only medication that helped her headaches. An MRI of the brain was essentially unremarkable except for some minor punctate foci of deep white matter, which Dr. Taylor opined was likely consistent with Plaintiff's complaint of migraine headaches. On examination Plaintiff was found to be alert, oriented, "pleasant", able to follow complex commands, and in "no acute distress". She also had 5/5 (full) muscle strength in all major muscle groups, with normal bulk and tone throughout, an upright axial posture, and an intact gait. Dr. Taylor's impression was that Plaintiff had migraine headaches that had converted to chronic daily headaches, and she prescribed Topamax and Fioricet. (R.p. 446). On March 8, 2010, Dr. Taylor wrote that Plaintiff had some improvement on Topamax and that she should continue to take Fioricet when needed. Plaintiff's headaches had improved since starting on the new medications, and Dr. Taylor again noted that Plaintiff had full muscle strength and a normal gait. (R.p. 447).

**Sea Island Medical Practice - John Garner, PAC**

Plaintiff was seen by Dr. Garner on January 11 and March 10, 2011 "to establish medical care," apparently as a new patient. Plaintiff complained of bilateral lower leg and foot pain. Physical examinations were essentially normal, and it was noted that Plaintiff had no muscle complaints, no headaches, no gait difficulties or muscle weakness, no joint complaints, and no psychiatric problems with a normal and positive affect. She was referred to podiatry for her flat feet, where she was given some inserts. (R.pp. 500-502, 510-513).



## II.

After a review of the medical evidence and the subjective testimony from the hearing, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments noted, she retained the RFC to perform light work, including the ability to sit for six hours in an eight hour day, and stand and walk for four hours in an eight hour day, limited to only occasional climbing. (R.p. 30). At the hearing, the ALJ asked a Vocational Expert whether a person of Plaintiff's age, education, and vocational experience who could perform light work that involved only occasional climbing could perform Plaintiff's past work. (R.p. 66). The VE described Plaintiff's past work as that of cashier, 2 unskilled, 2 light, 211.462.010; customer service, 4 semi-skilled, 2 light, 299.367-010; and hostess, 3 skilled, 2 light, 310.137-010, and testified that such an individual could perform all of Plaintiff's past relevant work. (R.pp. 66-67).

The Appeals Council adopted the ALJ's conclusion that Plaintiff retained the ability to perform work at the light level of exertion, but in doing so found that

> the residual functional capacity set forth in the [ALJ's] decision misstates the requirements of light work when it indicates that the claimant can stand and walk for 4 hours in an 8-hour day. This limitation is inconsistent with the "great weight" assigned to the state agency medical consultant's assessment that the claimant can stand or walk about 6 hours per day (Decision, page 7, Exhibit 8F, and Exhibit 15F). The Council finds that this assessment is consistent with the medical records in [the] record and amends the residual functional capacity set forth in the [ALJ's] decision as follows: the claimant retains the ability to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant can lift and carry up to 20 pound occasionally and 10 pounds frequently, sit for 6 hours in an 8-hour day, and stand and walk for **6** hours in an 8-hour day. She can occasionally climb.

(R.p.10, emphasis added).



## III.

Plaintiff asserts that in reaching its decision, the Appeals Council's "effort to address the ALJ error regarding the RFC findings tries to fix a problem in isolation that touches all aspects of the ALJ decision." (Plaintiff's Brief, ECF No. 19, p. 16). Plaintiff argues that the ALJ's decision indicated that Plaintiff "was restricted to a reduced range of light work, limited to standing and walking a total of 4 hours in an 8 hour day," and that "the Appeals Council changed the RFC finding to a full range of light work," in a misguided effort to "correct[] what it appeared to view to be a scrivener's error." Id. Plaintiff asserts, however, that "the evidence does not support the Appeals Council['s] assumption that the ALJ simply made a mistake and intended instead to find [Plaintiff] could perform a full range of light work." Id., p. 18-19.[5]

After careful review of the case file and opinions of the ALJ and Appeals Council, the undersigned does not find any reversible error in the Appeal s Council's consideration and finding on this issue. The record reflects that the ALJ and, subsequently, the Appeals Council, properly evaluated Plaintiff's severe and non-severe impairments and reasonably concluded that Plaintiff could perform a range of light work. As the Appeals Council's decision points out, its finding that Plaintiff could perform light work with the ability to sit, stand, and/or walk for six hours in an eight-hour workday with only occasional climbing, is supported by the medical record. No doctor - treating, examining, or non-examining - opined that Plaintiff has a functional work-related limitation

---

[5] Plaintiff's Brief also asserts that "the ALJ failed to perform an analysis of the Plaintiff's ability to perform her past relevant work that complies with the requirements of SSR 82-62, 20 C.F.R. § 404.1520, and Fourth Circuit precedent." (Plaintiff's Brief, ECF No. 19, p. 17). However, Plaintiff does not present separate argument on this issue. Nevertheless, the undersigned construes that this assertion is implicit in Plaintiff's argument that the ALJ intended his decision to state that Plaintiff "can stand for 4 hours of an eight-hour day," and that such a finding is inconsistent with the ALJ's finding that Plaintiff has the RFC to perform light work.



that prevents her from performing light work. See 20 C.F.R. § 404.1529(c)(4) [stating an ALJ must consider whether there are conflicts between a claimant's statements and statements by treating or non-treating sources]; Lee v. Sullivan, 945 F.2d 687, 693 (4th Cir. 1991) [affirming ALJ holding that claimant was not disabled where none of claimant's doctors had opined that claimant was disabled]. Plaintiff's medical examinations consistently revealed normal findings with no loss of muscle strength or other infirmities, and she generally received conservative treatment for her complaints. Craig v. Chater, 76 F.3d 589-590 (4th Cir. 1996)[noting importance of treating physician opinion]; Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessments of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]; Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) [conservative treatment not consistent with allegations of disability]; Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [assessment of an examining physician may properly be given significant weight]; Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989) ["The mere fact that working may cause pain or discomfort does not mandate a finding of disability]. The ALJ also gave great weight to Dr. Smolka's May 2010 opinion that Plaintiff could perform light work, which included the finding that Plaintiff could stand and/or walk for about six hours in an eight hour work day. (R.pp. 33, 427). See also (R.p. 404). See Millner v. Schweiker, 725 F.2d 243, 245 (4th Cir. 1984); accord Smith, 795 F.2d at 345.

Plaintiff points out that the ALJ refers to the RFC finding later in his decision as limiting Plaintiff to a "reduced range of light work", and argues that this statement indicates that the ALJ meant to limit Plaintiff to four hours of standing and/or walking, rather than the six hours the Appeals Council concluded the ALJ intended. However, the ALJ's decision explicitly states that in assigning Plaintiff an RFC for "a reduced range of light work," the ALJ was limiting Plaintiff "to



15

light work with occasional climbing to give claimant the benefit of the doubt." (R.p. 33).  The Appeals Council's correction of the ALJ's misstatement of the requirements of light work, and its accompanying modification of the ALJ's finding as to Plaintiff's RFC, is in compliance with 20 C.F.R. § 416.1479 and supported by substantial evidence in the record.  See <u>Laws</u>, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"]; <u>Thomas v. Celebrezze</u>, 331 F.2d 541, 543 (4th Cir. 1964)[court scrutinizes the record as a whole to determine whether the conclusions reached are rational]; <u>Moore v. Astrue</u>, No. 06-3514, 2008 WL 216605, at * 5 (D.S.C. Jan. 24, 2008)[Scrivener's error not grounds for remand].  Even assuming some error was committed by the Appeals Council in this case (which the undersigned expressly does not find), there is no cogent basis shown for a reversal of the decision. <u>Shinseki v. Sanders</u>, 129 S.C. 1696, 1706 (2009)[Party attacking the agency's determination normally has the burden of showing that an error warrants reversal of the decision]; <u>United States v. Wacker</u>, 72 F.3d 1453, 1473 (10th Cir. 1995)[Error is harmless unless it leaves one in grave doubt as to whether it had a substantial influence on the outcome of the case].  Therefore, this claim is without merit.

## IV.

Plaintiff further argues that "the ALJ did not explain his findings regarding [Plaintiff's] residual functional capacity, as required by Social Security Ruling ["SSR"] 96-8p." (Plaintiff's Brief, ECF No. 19, p. 17).[6]  However, the Appeals Council's decision adopted the findings and conclusions in the ALJ's decision, wherein the ALJ thoroughly discussed the medical

---

[6] Under SSR 96-8p, "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (<u>e.g.</u>, laboratory findings) and non-medical evidence (<u>e.g.</u> daily activities, observations)".



records and findings of Plaintiff's physicians as well as Plaintiff's own testimony, noting the physical findings as reflected in the medical evidence, the effectiveness of her treatments, and that his findings were based on the medical evidence and why. See generally, (R.pp. 29-33). This review, discussion, and analysis satisfies the requirements of SSR 96-8p. Cf. Roberts v. Masanari, 150 F.Supp.2d 1004, 1010 (W.D.Mo. 2001); Buchholtz v. Barnhart, 98 F. App'x 540, 547 (7th Cir. 2004); Delgado v. Commissioner of Social Serv., 30 F. App'x 542, 547-548 (6th Cir. 2002).

After a review of the decision and the record in this case, the undersigned does not find that the ALJ conducted an improper RFC analysis, or that his decision and its adoption by the Appeals Council otherwise reflects a failure to consider the effect Plaintiff's impairments had on her ability to work. Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993) [" . . . the ALJ need not evaluate in writing every piece of testimony and evidence submitted. . . .What we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'"]; Bowen, 482 U.S. at 146 [Plaintiff has the burden to show that she has a disabling impairment]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that the objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]. Plaintiff's argument that the ALJ and the Appeals Council should have gone into even greater detail with respect to these findings is without merit. Dryer v. Barnhart, 395 F.3d 1206, 1211( 11th Cir. 2005) [ALJ not required to specifically refer to every piece of evidence in the decision]; Rogers v. Barnhart, 204 F.Supp.2d 885, 889 (W.D.N.C. 2002). See also



Osgar v. Barnhart, No. 02-2552, 2004 WL 3751471 at *5 (D.S.C. Mar. 29, 2004), aff'd; Knox v.

Astrue, 327 F. App'x 652, 657 (7th Cir. 2009) ["[T]he expression of a claimant's RFC need not be

articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source

opinions is sufficient"], citing Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

## V.

        With respect to Plaintiff's argument that the ALJ improperly dismissed Plaintiff's

chronic headaches as non-severe, Plaintiff does not identify any work-related limitations that

stemmed from her headaches, and the evidence shows that they were controlled when she was

compliant with her medication.  (R.pp. 446-447).  See also (R.pp. 500-502 [where Plaintiff reported

no problems from headaches]).  The ALJ found that Plaintiff's headaches were not a severe

impairment because the medical evidence did not show that Plaintiff had any substantial limitations

related to her headaches, specifically noting that Plaintiff's CT scan showed only "minor punctate

foci of deep white matter," which was noted to be "incidental and nonspecific," and that Plaintiff's

"[n]eurological examinations were unremarkable and the claimant takes Topomax for relief."  (R.p.

30).  Further, Plaintiff testified at the hearing that she had headaches only "once in a blue moon" and

had last experienced a headache the previous month that lasted for 90 minutes, that she no longer had

daily headaches, and had experienced only two headaches in the past month.  (R.pp. 31, 59-60).

        The fact that Plaintiff's headaches were controlled with medication suggests that they

were not severe.  Cf. Gross, 785 F.2d at 1166 ["If a symptom can be reasonably controlled by

medication or treatment, it is not disabling."].  Thus, the ALJ concluded that Plaintiff's headaches

only minimally affected her ability to perform work-related activities, and were a non-severe

impairment. (R.p. 30).  Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the



evidence and resolve conflicts in that evidence]. The Appeals Council agreed with the ALJ's findings, (R.p.9), and found that "[t]he claimant's subjective complaints are not fully credible for the reasons identified in the body of the hearing decision." (R.p. 11). No reversible error is shown in this decision, as the Commissioner's findings are supported by substantial evidence in the record. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"]; see Lee, 945 F.2d at 692 [ALJ not required to include limitations or restrictions in his decision that he finds are not supported by the record]; Bowen, 482 U.S. at 146, n. 5 [Plaintiff has the burden to show that she has a disabling impairment].

## VI.

In her Reply Brief, Plaintiff concedes that the Appeals Council has authority pursuant to 20 C.F.R. § 404.979 to modify the ALJ's decision. However, Plaintiff argues that 'the Appeals Council does not support its modification properly by weighing the medical evidence in a manner that would allow them to change the RFC finding. (Plaintiff's Reply Brief, ECF No. 25, p. 1). Pursuant to 20 C.F.R. § 404.979, "[t]he Appeals Council may affirm, modify or reverse the administrative law judge hearing decision or it may adopt, modify or reject a recommended decision. If the Appeals Council issues its own decision, it will base its decision on the preponderance of the evidence." On review, the Appeals Council must "consider all the evidence in the administrative law judge hearing record as well as any new and material evidence submitted to it which relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.976(b).

In this case, the Appeals Council granted Plaintiff's request for review of the ALJ's decision, considered all of the evidence, including "the Council's notice of proposed action and



additional evidence and arguments, which are listed in the Supplemental List of Exhibits attached to [its] decision." (R.p.9). In its decision, the Appeals Council states that it "has considered the entire record" and makes six findings in which it adopts the findings and conclusions of the ALJ. Specifically, the Appeals Council states that it

> agrees with the Administrative Law Judge's findings under steps 1, 2, 3 and 4 of the sequential evaluation; namely, that the claimant has not engaged in substantial gainful activity since March 31, 2009, that the claimant has severe impairments which do not meet or equal in severity an impairment in the Listing of Impairments and that she is capable of performing past relevant work.

(R.p. 10). The Appeals Council then characterizes its decision as one which "adopts the Administrative Law Judge's conclusion that physically, the claimant retains the ability to perform work at the light level of exertion . . . but that she can only occasionally climb," and "clarifies the residual functional capacity set forth in the [ALJ's] decision," by correcting the ALJ's misstatement concerning the requirements of light work. Id.

The Appeals Council specifically finds that Plaintiff's "subjective complaints are not fully credible for the reasons identified in the body of the hearing decision." (R.p. 11). The Appeals Council's decision notes that the ALJ's hypothetical question to the vocational expert "is consistent with the state agency medical consultant's opinion that the claimant can stand and walk for about 6 hours," and that the expert testified that the person in the hypothetical could perform work consistent with Plaintiff's past relevant work, specifically, the position of cashier." (R.p. 10) Accordingly, the Appeals Council "adopt[ed] the [ALJ's] finding that the requirements of [Plaintiff's] past relevant work as a cashier are consistent with the amended functional capacity as set forth above," and adopted the ALJ's finding that Plaintiff is not disabled at any time through March 24, 2011. (R.pp. 10-11).



These findings are supported by substantial evidence in the case record.  See Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].  While Plaintiff would have the Appeals Council go in to even greater detail and analysis in explaining its decision, under the facts of this case it is not necessary.  See Dryer, 395 F.3d at 1211.  A plain reading of the Appeals Council's decision reflects the thorough review and consideration given by it to the entire record and to the evidence, findings, and conclusions enumerated in the ALJ's decision.  Accordingly, the Appeals Council's modification of the ALJ's RFC finding is based on the preponderance of the evidence in the record, and is supported by substantial evidence in the record.  This argument is without merit.

### Conclusion

Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion."  Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).  As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision.  Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period.  Therefore, it is recommended that the decision of the Commissioner be **affirmed.**



The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

May 10, 2013
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

